# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **LEOBARDO C. CAMPOS JR.,** | No. 2:05-cv-00108-AK |
| Petitioner, | |
| v. | **ORDER** |
| **DARRELL ADAMS,** Warden | |
| Respondent. | |

A jury convicted Leobardo Campos Jr. of first-degree murder and assault with a firearm.  Campos petitions for a writ of habeas corpus under 28 U.S.C. § 2254, claiming that (1) the jury instructions were inadequate, (2) his Batson motion was erroneously denied, (3) his sentence violates the Eighth Amendment and (4) his trial counsel rendered ineffective assistance.

## Background

A love triangle, a truck stop and three guns—what could possibly go wrong? Leobardo Campos loved the mother of his child, Sabrina Gutierrez, but she loved another man, Edward Sanchez.  One night, Campos drove to the truck stop where

both Sabrina and Edward worked. After a heated conversation with Sabrina, Campos pulled out a gun and walked toward Edward, who was also armed.

What happened next is unclear. Campos claims he obeyed Edward's order to drop his gun, and that shortly after doing so, Terrill Ingwersen, an off-duty corrections officer, began firing at Edward. Although we don't know who fired first, it's clear that all three men fired and that Edward died from two gunshot wounds, one inflicted by Campos and one by Terrill. Either shot would have been independently fatal.

A jury convicted Campos of first-degree murder and assault with a firearm. On direct appeal, Campos claimed that the jury instructions were invalid, the trial court erroneously denied his Batson motion[1] and his sentence was cruel and unusual. The Court of Appeal affirmed, and the California Supreme Court denied review. After his direct appeals failed, Campos filed original habeas petitions in the California trial, appellate and supreme courts alleging ineffective assistance of trial counsel. All three courts denied his petition. He then sought federal habeas review.

---

[1] Although Campos made a motion under People v. Wheeler, 583 P.2d 748 (Cal. 1978), abrogated in part by Johnson v. California, 545 U.S. 162, 173 (2005), the Ninth Circuit has explained that "a Wheeler motion is the procedural equivalent of a Batson challenge in California." Paulino v. Castro, 371 F.3d 1083, 1088 n.4 (9th Cir. 2004).

## Analysis

This petition is governed by the Antiterrorism and Effective Death Penalty Act (AEDPA). 28 U.S.C. § 2254. Under AEDPA, a federal court can't grant habeas relief unless the state court's adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of" clearly established Supreme Court precedent, or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Id. § 2254(d)(1), (2).

We can't issue the writ simply because we conclude the state court "applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Williams v. Taylor, 529 U.S. 362, 411 (2000). We defer to the state courts even if they don't cite Supreme Court decisions, and even if they're unaware of them. Early v. Packer, 537 U.S. 3, 8 (2002) (per curiam). "[S]o long as neither the reasoning nor the result of the state-court decision contradicts" Supreme Court precedent, the state court decision is not unreasonable. Id. Finally, we may not grant relief unless the state court's constitutional error had a "substantial and injurious effect or influence in determining the jury's verdict." Brecht v. Abrahamson, 507 U.S. 619, 637 (1993) (internal quotation marks omitted).

**I. Claims on Direct Appeal**

Except for his ineffective assistance claim, Campos raised all of his federal claims on direct appeal. "In determining whether a state court decision is contrary to federal law, we look to the state's last reasoned decision," which in this case was the Court of Appeal's decision. Avila v. Galaza, 297 F.3d 911, 918 (9th Cir. 2002); see also Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991).

**A. Jury Instructions**

Campos argues that the jury instructions at his trial were deficient. He claims that Edward's death was not a reasonably foreseeable consequence of his actions because any events that happened after he dropped his gun were traceable not to him, but to the off-duty corrections officer, Terrill. Therefore, the trial court should have instructed the jury on intervening and superseding causes sua sponte.

Habeas relief on claims of invalid jury instructions is reserved for those cases where "the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process." Cupp v. Naughten, 414 U.S. 141, 147 (1973); see also Waddington v. Sarausad, 555 U.S. 179, 191 (2009). This is not one of those cases. The trial judge used California's model jury instruction and explained, "When the conduct of two or more persons contributes concurrently as a cause of

the death, the conduct of each is a cause of death if that conduct was also a substantial factor contributing to the result." Rep.'s Tr. on Appeal 890–91 (using 1 Cal. Jury Instructions, Criminal 3.41 (6th ed. 1996)).  Even without an explicit explanation of intervening or superseding causation, this instruction was sufficient to inform the jury of the relevant California law.  See People v. Fiu, 81 Cal. Rptr. 3d 32, 41 (Cal. Ct. App. 2008).  But the judge also went beyond the model instruction, stating, "A result cannot be the natural and probable consequence of an act if the act was unforeseeable.  The abnormality of a response is an element to be considered in evaluating proximate cause."  This is more than sufficient to meet constitutional standards.

Indeed, in Henderson v. Kibbe, 431 U.S. 145, 156 (1977), the Supreme Court held that the lack of an express instruction on foreseeability didn't entitle the petitioner to habeas relief because "jurors would have responded to an instruction on causation consistently with their determination of the issues that were comprehensively explained."  That's also true here.  By convicting Campos, the jury necessarily found that Campos's actions were a proximate cause of Edward's death.  "Even if we were to make the unlikely assumption that the jury might have reached a different verdict pursuant to an additional instruction, that possibility is

too speculative to justify the conclusion that constitutional error was committed." Id. at 157.

### B. Batson Challenge

Campos claims the trial court erred in ruling that the prosecutor's peremptory challenges didn't violate Batson v. Kentucky, 476 U.S. 79 (1986). At trial, Campos challenged the prosecutor's dismissal of two young Hispanic women. The trial judge found that Campos had made out a prima facie case of discrimination and asked the prosecutor to justify his strikes. The prosecutor explained that both women appeared immature and inexperienced, and one especially seemed incompatible with the other jurors because of her youth. The trial judge then denied Campos's motion.[2]

On direct appeal, the Court of Appeal held, "Here, the record supports the trial court's finding that the prosecutor offered valid justifications for excusing the prospective jurors." The court continued, "The prosecutor gave a reasonable explanation for excusing the prospective jurors that included specific reference to age, and the prosecutor explained how the prospective jurors were undesirable."

---

[2] Campos challenged three of the prosecutor's strikes at trial, but he challenged only the trial judge's ruling as to the two Hispanic women on direct appeal and in his habeas petitions.

Campos hasn't pointed to any evidence in the record to undermine the Court of Appeal's decision.  Under AEDPA, we may provide habeas relief only when the acceptance of a race-neutral explanation for a strike was based on "an unreasonable determination of the facts."  Rice v. Collins, 546 U.S. 333, 338–39 (2006) (quoting 28 U.S.C. § 2254(d)(2)).  In Rice, the Supreme Court held that it wasn't unreasonable to accept a strike based on, among other things, a juror's youth and her tendency to roll her eyes.  Id. at 336, 339–41.  We can't say it was unreasonable to accept the prosecutor's explanation that the dismissed jurors seemed immature and out of place with the seated jurors.

**C.  Sentence**

In addition to his murder conviction and sentence, Campos received a sentence enhancement of 25 years to life because he "intentionally discharge[d] a firearm and proximately cause[d] . . . [a] death."  Cal. Penal Code § 12022.53(d).  Campos doesn't claim the enhancement is unconstitutional as applied to him; instead, he argues that the enhancement statute is facially unconstitutional.  Campos contends that, because not all crimes involving firearms are the same, applying an across-the-board enhancement violates the Eighth Amendment.

The Court of Appeal rejected Campos's challenge, noting that California courts have previously rejected constitutional challenges to the enhancement statute.  See, e.g., People v. Zepeda, 105 Cal. Rptr. 2d 187, 207 (Cal. Ct. App. 2001).  In Zepeda, the Court of Appeal upheld the enhancement statute, noting that it "sets forth three gradations of punishment based on increasingly serious types and consequences of firearm use in the commission of the designated felonies."  Id.

The U.S. Supreme Court has explained that, in order to succeed in a facial challenge outside the First Amendment context, a litigant must establish "that no set of circumstances exists under which the Act would be valid, i.e., that the law is unconstitutional in all of its applications."  Wash. State Grange v. Wash. State Republican Party, 552 U.S. 442, 449 (2008) (internal quotation marks omitted).  Campos's own situation demonstrates that the sentence enhancement can be applied constitutionally in at least some cases.  See Lockyer v. Andrade, 538 U.S. 63, 72 (2003).  Therefore, the Court of Appeal's rejection of Campos's claim was not an unreasonable application of federal law.

## II.  Ineffective Assistance of Counsel

After his direct appeal failed, Campos sought habeas relief in the California state courts, alleging his trial counsel was ineffective.  The warden argues that Campos hasn't exhausted this claim.

### A.  Exhaustion

Exhaustion ensures that prisoners fairly present their claims to the state courts before seeking relief from a federal court.  28 U.S.C. §§ 2254(b)(1)(A), (c); O'Sullivan v. Boerckel, 526 U.S. 838, 842 (1999).  When the Superior Court denied Campos's state habeas petition, it cited People v. Duvall, 886 P.2d 1252, 1258 (Cal. 1995) (in bank) (internal quotation marks omitted), which held, "Conclusory allegations made without any explanation of the basis for the allegations do not warrant relief . . . ."  Citation to Duvall typically means that a prisoner has not stated the claims in his habeas petition with sufficient particularity and can amend his petition to do so.  See Cross v. Sisto, 676 F.3d 1172, 1177 (9th Cir. 2012).  According to the warden, Campos's failure to amend his habeas petition means he didn't exhaust his ineffective assistance of counsel claim.

Citation to Duvall does not establish per se that Campos failed to exhaust. In Kim v. Villalobos, 799 F.2d 1317, 1319 (9th Cir. 1986), the Ninth Circuit

considered a petition that the California Supreme Court had denied with a citation to Ex parte Swain, 209 P.2d 793 (Cal. 1949) (in bank).  Citation to Swain, like a citation to Duvall, typically indicates that the state court denied the petition because it was not alleged with sufficient particularity and the deficiency could be cured with an amended petition.  See Cross, 676 F.3d at 1177.

Nonetheless, Kim held that it is "incumbent" upon the federal court to independently examine the state petition to determine "whether the federal standard of 'fair presentation' of a claim to the state courts has been met."  799 F.2d at 1320.  If a petitioner has alleged his claims with as much particularity as possible, then the state court's "denial for lack of particularity amounts to a holding that the claims themselves are defective."  Id.  Since Swain and Duvall stand for the same proposition, we apply the principles set forth in Kim and review the petition Campos filed with the Superior Court to determine whether he fairly presented his claims.  Compare Swain, 209 P.2d at 796, with Duvall, 886 P.2d at 1258.

It's clear from his petition and the Superior Court's decision that Campos alleged his claim with as much particularity as possible.  Campos argued in his petition that the record showed that his crime was the result of "rage, fright, terror, and wild desperation," but that his attorney ignored the possibility of a heat of

passion defense.  In denying the petition, the Superior Court noted the appellate court's comment on direct appeal that a jury would not have accepted such a defense, because "[t]here is overwhelming evidence that defendant threatened victim and that he initiated an armed confrontation."  Therefore, the court's citation to Duvall was a signal that the claim itself was defective, meaning Campos has exhausted his ineffective assistance of counsel claim.  See Kim, 799 F.2d at 1320.

## B.  Merits

In order to prove ineffective assistance of counsel, Campos must show that (1) his counsel's performance "fell below an objective standard of reasonableness" and (2) this deficient performance prejudiced his defense.  Strickland v. Washington, 466 U.S. 668, 687–88, 692 (1984).  There's prejudice if Campos shows "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Id. at 694.

Campos argues that his attorney "defaulted in his obligations and duties to effectively investigate and make application of the existing law pertaining to Crimes of Passion."  Campos doesn't claim there are any facts that his trial counsel could have uncovered through more investigation.  Instead, he claims the "record in and of itself certainly is more than suffice [sic] to establish and support" a heat

of passion defense. But the record shows that trial counsel understood the heat of passion defense and argued it to the jury. In closing, Campos's counsel argued, "His state of mind wasn't that of planning and deliberating and premeditating and going out there for a specific purpose. . . . He just went over to see Sabrina." Counsel continued, "He wasn't doing anything other than trying to contact Sabrina. It got out of hand. He lost control of the situation, and he didn't know what to do because he was drunk. He didn't know how to shoot a gun. He was acting emotional and somewhat angry. The situation got away from him. The results are tragic, terrible." The record also shows that the jury was instructed on heat of passion.

Campos laments that his counsel focused on self-defense more than heat of passion and didn't call an expert to testify about his diminished mental state. But Campos's lawyer had a fine line to walk: If he argued too forcefully that Campos committed a crime of passion, he would undermine the self-defense claim. The fact that counsel chose to emphasize the self-defense theory, while also leaving room for the jury to accept a heat of passion defense, was not deficient performance. Indeed, "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." Strickland, 466 U.S. at 690. Thus, we can't say that the Superior Court's denial of Campos's

ineffective assistance of counsel claim was an unreasonable application of federal law. See 28 U.S.C. § 2254(d)(1).

Campos alleges two other deficiencies in his counsel's performance that the Superior Court did not specifically address in its opinion. Without a state court decision articulating a rationale, we have "no basis other than the record" for determining whether the state court decision deserves deference under 28 U.S.C. § 2254(d)(1). Delgado v. Lewis, 223 F.3d 976, 981–82 (9th Cir. 2000), abrogated on other grounds by Andrade, 538 U.S. at 75–76. In such circumstances, we apply the objectively reasonable standard of Williams, 529 U.S. 362, and conduct an independent review of the record. Delgado, 223 F.3d at 982.

Campos claims his trial counsel should have aggressively challenged the forensic pathologist's assessment of the gunshot wounds by calling a defense expert. Although a defense expert may have weakened the state's evidence that Campos's shot was fatal, there is no reasonable probability that a defense expert would have given the jury reasonable doubt as to the proximate cause of Edward's death. As the prosecutor argued during closing, "Even if the wound caused by the defendant wasn't fatal, it would not relieve him of the responsibility of the murder." That's because Terrill's shot, which was also fatal, came in response to

Campos's actions.  See People v. Gardner, 43 Cal. Rptr. 2d 603, 606–07 (Cal. Ct. App. 1995).

Finally, Campos claims his counsel "failed to motion the court for disclosure of all related factors pertaining to [Terrill's] background in reference to his conduct, mental state, and more importantly his prior experience and performance with weapons in general."  Beyond these vague insinuations about Terrill's past, Campos doesn't identify anything specific his attorney failed to uncover.  See McFarland v. Scott, 512 U.S. 849, 860 (1994) (O'Connor, J., concurring in part and dissenting in part) ("[T]he habeas petition, unlike a complaint, must allege the factual underpinning of the petitioner's claims.").  "When the record clearly shows that the lawyer was well-informed, and the defendant fails to state what additional information would be gained by the discovery she or he now claims was necessary, an ineffective assistance claim fails."  Bragg v. Galaza, 242 F.3d 1082, 1088 (9th Cir. 2001), amended by 253 F.3d 1150 (9th Cir. 2001).  In addition, "ineffective assistance claims based on a duty to investigate must be considered in light of the strength of the government's case."  Eggleston v. United States, 798 F.2d 374, 376 (9th Cir. 1986).

On the record, we can't say that the Superior Court was unreasonable in rejecting Campos's claim.  See Delgado, 223 F.3d at 982.  The record shows

defense counsel moved for the disclosure of any and all exculpatory evidence under Brady v. Maryland, 373 U.S. 83 (1963), and the prosecutor complied.  In addition, defense counsel effectively questioned Terrill on cross-examination, challenging his claim that he fired only once, delving into Terrill's training and querying his involvement in the government's investigation of Campos.  These facts show that defense counsel was well-informed.  See Bragg, 242 F.3d at 1088.  Moreover, Campos hasn't pointed to anything specific his counsel failed to uncover, and thus can't prove his counsel was ineffective.  And, when we consider counsel's alleged failure in light of the government's evidence, which the Court of Appeal noted was "extremely persuasive," it's clear the Superior Court was not unreasonable in denying Campos's claim.  See Eggleston, 798 F.2d at 376.

\*          \*          \*

Campos has shown neither that the state courts unreasonably denied his claims nor that the alleged constitutional errors had a "substantial and injurious effect" on the outcome of his trial.  Brecht, 507 U.S. at 637 (internal quotation marks omitted); see also 28 U.S.C. 2254(d).  Therefore, his habeas petition is denied.  Because Campos has failed to make a substantial showing that he was

page 16

denied a constitutional right, no certificate of appealability shall issue. See 28 U.S.C. § 2253(c)(2); Miller-El v. Cockrell, 537 U.S. 322, 336 (2003).

**PETITION DENIED.**

DATED: September 5, 2012

_____
**ALEX KOZINSKI**
Chief Circuit Judge
Sitting by designation